[No. A084205. First Dist., Div. Three. Nov. 24, 1999.]

LISA S. MAC, as Administrator, etc., Plaintiff and Appellant, v. BANK OF AMERICA et al., Defendants and Respondents.

COUNSEL

John E. Boessenecker for Plaintiff and Appellant.

Preston DuFauchard for Defendant and Respondent Bank of America.

Thomas O. Jacob for Defendant and Respondent Wells Fargo Bank.

OPINION

**PARRILLI, J.**—Lisa S. Mac, as administrator of Margaret Glodt's estate, sued Bank of America and Wells Fargo Bank to recover funds drawn from Glodt's accounts after her death. According to the complaint, Glodt's nephew James Glodt had forged checks shortly before her death and the banks had made payment on the checks shortly after her death. The banks demurred, contending the complaint was barred by the one-year statute of limitations provided in Code of Civil Procedure section 340, subdivision (3), and by the one-year period provided in California Uniform Commercial Code section 4406, subdivision (f) for a customer to discover and report a check with an unauthorized signature. The trial court sustained the demurrers without leave to amend. We reverse the ensuing judgment of dismissal.

We must treat the demurrers as admitting all material facts properly pleaded in the complaint. If those facts are sufficient to support a cause of action under any valid theory, the complaint is good against the demurrers. (*Quelimane Co.* v. *Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38-39 [77 Cal.Rptr.2d 709, 960 P.2d 513]; *Baum* v. *Duckor, Spradling & Metzger* (1999) 72 Cal.App.4th 54, 63 [84 Cal.Rptr.2d 703].)

Mac's complaint sets out the following facts. Margaret Glodt died intestate on February 26, 1996. James Glodt, a nephew of Margaret Glodt's predeceased spouse, filed a petition for letters of administration on April 2, 1996. Mac filed a competing petition on April 29 on behalf of Margaret Glodt's blood relatives. Mac was appointed administrator of the estate on September 4, 1996. James Glodt, who had his aunt's checkbooks when she died, refused to turn them over to Mac when Mac requested them after her appointment as administrator. Mac visited all the banks within six blocks of Margaret Glodt's home, and discovered two checking accounts with Bank of America and one with Wells Fargo. Mac closed the accounts on November 27, 1996. Sometime later, she ordered statements for each account. She received statements from both banks around February of 1997. For the first time, she learned that most of the funds had been withdrawn from the

accounts around the time of Margaret Glodt's death. Mac obtained copies of the checks, submitted them to a documents expert, and learned they were forgeries. James Glodt had forged two Wells Fargo checks on February 12, 1996, and two more on February 15, for a total of $35,603.47. He also forged Bank of America checks on February 12 and 15, amounting to $75,000. All these checks cleared Margaret Glodt's bank accounts during the period from March to May, 1996.

Mac unsuccessfully demanded that the banks replace the funds misappropriated by James Glodt. On November 26, 1997, she filed a complaint against James Glodt and the banks, alleging causes of action for forged signature, negligence, and breach of the covenant of good faith and fair dealing. In her first amended complaint Mac added a cause of action for unlawful business practice under Business and Professions Code section 17200.

■ Code of Civil Procedure section 340, subdivision (3) establishes a one-year statute of limitations for an action "by a depositor against a bank for the payment of a forged or raised check." When "canceled checks and a statement of his account with the bank are regularly furnished to the depositor, the statute begins to run from the time the alleged 'forged or raised' check was delivered to the depositor." (*Union Tool Co.* v. *Farmers etc. Nat. Bk.* (1923) 192 Cal. 40, 52-53 [218 P. 424, 28 A.L.R. 1417]; see also *Roy Supply, Inc.* v. *Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1065 [46 Cal.Rptr.2d 309].) California Uniform Commercial Code section 4406, subdivision (f) precludes a bank customer from asserting a claim against a bank based on an unauthorized signature unless the customer has discovered and reported the unauthorized signature within one year after a statement of account showing payment of the item, or the item itself, was "made available to the customer." Both periods apply to any cause of action by a customer against a bank premised on a forged check, regardless of how the pleadings are framed. (*Union Tool Co.* v. *Farmers etc. Nat. Bk., supra,* 192 Cal. at pp. 50-52; *Roy Supply, Inc.* v. *Wells Fargo Bank, supra,* 39 Cal.App.4th at p. 1066.)[1]

The custom of sending monthly bank statements is sufficiently established to support judicial notice. The date a check was paid can support an inference that it was the subject of a monthly statement over a year before a

---

[1]Mac relies on *Sun'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 698-699 [148 Cal.Rptr. 329, 582 P.2d 920], for the propositions that the three-year limitations period for negligence actions applies, and that California Uniform Commercial Code section 4406 affects only warranty actions. However, we agree with the *Roy Supply* court's analysis of the limited precedential value of *Sun'n Sand*. (*Roy Supply, Inc.* v. *Wells Fargo Bank, supra,* 39 Cal.App.4th at pp. 1067-1071.)

suit was filed or an unauthorized signature reported. (*Roy Supply, Inc.* v. *Wells Fargo Bank, supra*, 39 Cal.App.4th at p. 1074.)

■ In this case, the forged checks cleared Margaret Glodt's accounts from March through May of 1996. We may infer that statements reflecting these checks were sent from April through June of 1996, approximately. However, the statements were not available to an owner of the account. Margaret Glodt's title to her bank accounts passed to her heirs on her death in February 1996, subject to the administration of her estate.[2] (Prob. Code, § 7000.) Both the statute of limitations and the notification period provided in the Commercial Code require that a statement of account or the cancelled check itself be furnished to the account holder. Here that did not occur until February 1997, when Mac obtained statements from the banks, with authority to take possession and control of the estate property.[3] (Prob. Code, § 9650, subd. (a)(1).) The complaint filed in November 1997 was thus timely under both the Code of Civil Procedure and the California Uniform Commercial Code.

The banks insist that the statutory periods began to run when account statements were mailed. Regardless whether the sending or receipt of a statement is the operative time, however, the statement must be sent *to a customer* who can examine it for items paid on an unauthorized signature.[4]

---

[2]We note that Margaret Glodt never had a claim against the banks, because she was dead when they made payment on the forged checks. Therefore, this case is unaffected by the provisions of Code of Civil Procedure section 366.1, which govern the limitations period in cases where "a person entitled to bring an action dies before the expiration of the applicable limitations period and the cause of action survives."

[3]We need not consider whether receipt of the statements by James Glodt might have triggered the statutory periods. As a relative by marriage, as opposed to the blood relatives mentioned in the complaint, he was not an heir with a property right in the accounts under the intestacy statutes. (Prob. Code, § 6402.) Nor need we consider whether the limitations and notification periods would have commenced if Mac had obtained the statements before she was appointed administrator of the estate. (See *Cortelyou* v. *Imperial Land Co.* (1913) 166 Cal. 14, 24 [134 P. 981] [statute of limitations runs on cause of action accruing after death of person who would have been entitled to sue, even if no administrator has been appointed].) No one who could be considered the banks' customer was furnished with a statement until February 1997.

[4]Our Supreme Court has clearly stated that the statute of limitations provided in Code of Civil Procedure section 340, subdivision (3) "begins to run from the time the alleged 'forged or raised' check was *delivered* to the depositor." (*Union Tool Co.* v. *Farmers etc. Nat. Bk., supra*, 192 Cal. at pp. 52-53, italics added.) In *Kiernan* v. *Union Bank* (1976) 55 Cal.App.3d 111, 114, 116 [127 Cal.Rptr. 441], the court interpreted California Uniform Commercial Code section 4406 to mean that a statement is "made available" "when a bank sends to its customer a statement of account" by depositing the statement in the mail. However, as noted in *Roy Supply, Inc.* v. *Wells Fargo Bank*, the Legislature adopted California Uniform Commercial

Regarding the statute of limitations, our Supreme Court explained: "The whole purpose of submitting monthly or regular statements to depositors, together with canceled checks as vouchers in support of them, is to direct the attention of the depositor to the state of his account . . . . It is his duty to examine the statement and the vouchers, and to report at once any error in the one and any forgeries or alterations of the other. . . . The submission of a check as a voucher and of a statement in which its amount is charged to the depositor's account is notice to him that the bank treats that check as the basis of a valid charge to his account; that it has charged it to that account, and, of course, that it no longer holds itself liable to him for the amount so charged. It is a denial of liability for the amount paid out on the check, and we cannot doubt that it sets in motion the period of limitations prescribed by subdivision 3 of section 340." (*Union Tool Co.* v. *Farmers etc. Nat. Bk.*, *supra*, 192 Cal. at pp. 53-54, citation omitted.)

Similarly, the California Uniform Commercial Code notice period, while it applies "[w]ithout regard to care or lack of care of either the customer or the bank," assumes that there is a customer receiving the statement who can "discover and report the customer's unauthorized signature." (Cal. U. Com. Code, § 4406, subd. (f).) The statutory preclusion of claims after a year has passed is based on the consideration that "there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature." (U. Com. Code com. 5, 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 4406, p. 663 [discussing predecessor provision].) A dead customer, however, has no chance of discovering a forgery.

The banks note that under California Uniform Commercial Code section 4405, subdivision (a), the death of a customer does not revoke a bank's "authority to accept, pay, collect, or account until the bank knows of the fact of death . . . and has reasonable opportunity to act on it." The opening sentence of this provision indicates that it is concerned with a "bank's

Code section 4406 with the intent that its notification period should coincide with the statute of limitations. (39 Cal.App.4th at pp. 1065, fn. 15, 1073-1074, fn. 25; see Cal. U. Code Code com. 8, 23B West's Ann. Cal. U. Com. Code (1964 ed.) foll. § 4406, pp. 660-661.)

For purposes of this appeal we need not decide whether sending or receipt is the operative event under California Uniform Commercial Code section 4406, subdivision (f), since as explained above a statement must be sent *to a customer* to trigger the notification period. We note, however, that it makes sense to apply the limitations and notification periods consistently. For instance, in the *Union Tool* case our Supreme Court contemplated the delivery of a cancelled check as the beginning of the limitations period. However, in 1992 the Commercial Code was revised to relieve banks of the duty to provide their customers with cancelled checks. Now only a statement of account is required, so long as the statement is "sufficient to allow the customer reasonably to identify the items paid." (Cal. U. Com. Code, § 4406, subd. (a).) It is logical to conclude that with this change in banking practices, the limitations period governing an action on a forged check is triggered when the customer is provided with a statement in compliance with the California Uniform Commercial Code.

authority to accept, pay, or *collect an item or to account for proceeds of its collection* . . . ." (*Ibid.*, italics added.) But even if the statute is read to apply to checking account statements, it does not follow that sending a statement to a deceased customer will trigger the notification period of California Uniform Commercial Code section 4406, subdivision (f).

California Uniform Commercial Code section 4405 is intended to ensure that banks can pay checks without having to "verify the continued life and competency" of their customers. (Cal. U. Com. Code com. 1, 23B West's Ann. Cal. U. Com. Code (1999 pocket supp.) foll. § 4405, p. 163.) There is no reason to believe, however, that it is meant to facilitate banks' payment of *forged* checks without liability. The California Uniform Commercial Code addresses the limitation of such liability in section 4406. Subdivision (f) of that section is intended to impose "an absolute time limit on the right of a customer to make claim for payment of altered or forged paper without regard to care or lack of care of either the customer or the bank." (Cal. U. Com. Code com. 5, 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 4406, p. 663 [discussing predecessor provision].) To say that the limitation on claims is "absolute" is not to say that the one-year notification period must always begin with the sending of an account statement in the usual course of business.[5] There must be a customer to whom the statement is "made available" for the notification period to operate rationally; the statute contemplates that the statement will enable the detection and reporting of forged checks paid by a bank. Banks enjoy the substantial benefit of the preclusion of claims after one year even if they have acted negligently. We think it is not too great a burden in cases where the customer has died to delay the start of the notification period until a statement becomes available to a successor account holder.

Our research has disclosed two cases factually similar to ours. In both, the courts mechanically applied the Uniform Commercial Code's notification

---

[5]Other subdivisions of California Uniform Commercial Code section 4406 provide limitations on banks' liability that are contingent on the parties' diligence or good faith, as opposed to the "absolute" preclusion of subdivision (f). Under subdivision (d), a customer who fails to reasonably discover and promptly report an unauthorized signature cannot assert a claim against the bank if the bank shows that the customer's neglect caused it to suffer a loss, nor can the customer recover for other unauthorized signatures by the same wrongdoer on which the bank made payment before receiving notice and after a reasonable time (not exceeding 30 days) for the customer to have discovered and reported the items. Subdivision (e) states two exceptions to the preclusion provisions of subdivision (d): if the customer proves the bank failed to exercise ordinary care in paying the item, the loss is allocated between the customer and the bank; and if the customer proves the bank did not pay the item in good faith, the loss falls entirely on the bank.

requirements to bar claims against banks for payment of forged checks, when more than a year had passed since statements were sent to dead customers. (*Siecinski* v. *First State Bank* (1995) 209 Mich.App. 459 [531 N.W.2d 768, 770]; *Lieberman* v. *Worden* (N.Y. Sup. Ct. 1998) 36 U.C.C. Rep. Serv.2d 164, 167.) We believe these courts erred by failing to apply the statutory specification that the notification period commences when a statement is "made available to the customer." Holding that a statement can only be "available" to a living customer better serves both the literal meaning of the statute and the balance of interests between customers and banks that California Uniform Commercial Code section 4406 strives to achieve.

## DISPOSITION

The judgment is reversed. Mac shall recover her costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.

On December 21, 1999, the opinion was modified to read as printed above.