Filed 3/6/15  Sapinish Inn v. Nara Bank CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| SPANISH INN, INC., | D066487 |
| Cross-Complainant and Appellant, | |
| v. | (Super. Ct. No. INC1104681) |
| NARA BANK et al., | |
| Cross-Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Riverside County, John G. Evans, Judge.  Affirmed.

Law Offices of Nejat Kohan, Nejat Kohan; and Robert S. Gerstein for Cross-Complainant and Appellant.

The Song Law Group, Joon Song, Steven Han; Westrup Klick and Rhonda Klick for Cross-Defendant and Respondent Nara Bank.

Woodruff, Spradlin & Smart and Mark M. Monachino for Cross-Defendant and Respondent City of Palm Springs.

Grant & Zeko, Jonathan R. Zeko; The Grant Law Firm and Alexander J. Kessler for Cross-Defendant and Respondent Pacific L 39.

This action arises out of two loans, one in the amount of $6 million and one in the amount of $1.3 million, Nara Bank (Nara) made to Spanish Inn, Inc. (Spanish Inn) to rebuild and expand its hotel. The loans were personally guaranteed by Spanish Inn's owners, Nejat Kohan and Hormoz Ramy.

The terms of the loans required Spanish Inn to receive a certificate of occupancy from the City of Palm Springs (the City) by a certain date, but Spanish Inn failed to comply with that condition. Thereafter, the loans matured and Spanish Inn defaulted on both loans by failing to pay the amounts due.

Nara brought a foreclosure action against Spanish Inn, Kohan and Ramy. Nara thereafter assigned its interest in the loans to Pacifica L 39, LLC (Pacifica), and Nara dismissed its complaint.

Spanish Inn, Kohan and Ramy filed several cross-complaints against Nara, the City, Pacifica and others (collectively, cross-defendants). Thereafter, Kohan and Ramy's cross-complaints were dismissed, and Ramy and Kohan do not appeal those dismissals.

In the last and operative cross-complaint, Spanish Inn asserted causes of action against Nara for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and indemnity. As against the City, Spanish Inn alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing, unlawful taking of private property, and indemnity. However, as against the City, Spanish Inn has limited its appeal to the breach of contract and breach of the covenant of good faith and fair

2

dealing causes of action. As against Pacifica, Spanish Inn asserted causes of action for rescission, interference with contractual relationship and interference with prospective economic advantage.

Nara, Pacifica and the City filed demurrers, which the court sustained without leave to amend, finding the cross-complaint failed to state facts sufficient to state a cause of action against any of the cross-defendants.

Spanish Inn appeals, asserting its cross-complaint stated sufficient facts against Nara, Pacifica, and the City. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I. *FACTUAL BACKGROUND*

Because this matter comes before us as a result of the court's sustaining cross-defendants' demurrers, we take the factual background from the applicable cross-complaint, exhibits attached thereto, and matters of which the court took judicial notice.

A. *Subdivision Map Approval*

On September 7, 2005, the City adopted Resolution No. 21388 conditionally approving a tentative subdivision map permitting the subdivision of a 1.46-acre parcel for a hotel and residential condominium units at the location of 640 North Indian Canyon, Palm Springs (the project). The project also included a use permit authorizing multi-family construction as a part of the project.

Among the conditions of approval was condition 5 requiring Spanish Inn to be "responsible for the design and construction of the street improvements required to implement the 'Movie Colony Traffic Calming Program' [Traffic Program]." Condition 6

3

stated, "The Engineering Division has estimated the total cost of the 'Movie Colony Traffic Calming Program' at approximately $362,000 with an estimated fair share of the $111,000 assigned to the proposed development." Condition 6 also provided that Spanish Inn could request the City to enter into a reimbursement agreement providing for reimbursement from other property owners (reimbursement Agreement) also subject to the street traffic program: "Reimbursement shall be determined as the proportionate share of the cost of constructing the street improvements, as approved by the City Engineer, and reimbursement shall be made to the applicant as reimbursements are received, if any, in accordance with the terms of the reimbursement agreement."

After the tentative map approval, in 2005 Spanish Inn commenced construction of the Traffic Program's offsite street improvements and needed to complete that construction before the final subdivision map would be approved by the City. On February 13, 2008, the City approved Spanish Inn's final subdivision map, and the offsite street improvements were completed at that time.

B. *The Loans*

In April 2008 Nara loaned Spanish Inn $6 million for the purpose of constructing improvements on the property. The original maturity date of the loan was October 18, 2009.

On March 25, 2010, Nara Bank and Spanish Inn agreed to extend the maturity date of the $6 million loan. At the time of the extension of the $6 million loan, Nara Bank loaned Spanish Inn an additional $1.3 million.

4

In need of further funds, Spanish Inn requested financial assistance from the City. On January 10, 2010, the City approved a $500,000 loan agreement, subject to a number of covenants and conditions.

Under article II, paragraph 2.1 of the loan agreement with the City, disbursements would be made to Spanish Inn only after a number of conditions were satisfied. Among the conditions to disbursement of loan funds were the requirements that (1) no condition of default as defined in the agreement has been committed; (2) Spanish Inn was to submit to the City an amended use permit application to convert 20 condominium units in the previously approved plan to no more than 34 additional hotel units and fully cooperate with the City regulatory entities and officials in the City's review of the amended use permit application; and (3) all remaining work must be fully completed and a certificate of occupancy be completed on or before February 9, 2011.

Because Spanish Inn was unable to complete construction in a timely fashion, Nara extended the maturity dates of the $6 million and $1.3 million loans on two occasions, to March 31, 2011, and May 15, 2011, respectively.

Both loans required Spanish Inn to obtain a certificate of occupancy from the City by May 6, 2011. Spanish Inn agreed to this obligation in a change in terms agreement (CITA).

C. *Spanish Inn Changes Project*

Spanish Inn originally planned for the Spanish Inn Hotel to offer hotel rooms and sell condominiums. Spanish Inn thereafter decided to convert the project to only providing hotel rooms. However, Spanish Inn concedes that it did not obtain a building

5

permit for the hotel-only project until May 12, 2011, after the final maturity dates of both loans and the deadline for obtaining a certificate of occupancy.

D. *The City Imposes Additional Conditions*

In April of 2011 the City notified Spanish Inn of changes that needed to be made to the project in order to comply with the Americans With Disabilities Act (ADA). As Spanish Inn concedes in its cross-complaint, however, "The changes the City imposed meant that the project could not possibly be completed with a Certificate [of Occupancy] issued by May 9, 2011."

E. *Reimbursement Agreement*

Attached to Spanish Inn's fourth amended cross-complaint, but not to its sixth amended cross-complaint, is a reimbursement agreement with the City, dated March 7, 2011. The reimbursement agreement provided for collection and reimbursement of funds from the owners of two neighboring properties, Colony Palms Hotel and Indian Manor. Upon Spanish Inn substantiating its costs, the City agreed that within a reasonable time it would use reasonable efforts to collect up to $45,288 from the Colony Palms Hotel and up to $50,000 from the Indian Manor property. Upon receipt of payments from these other property owners, the City would then forward the payments on to Spanish Inn. The reimbursement agreement stated that it "supersedes all negotiations and previous agreements between the parties with respect to all or part of the subject matter hereof . . . ."

According to Spanish Inn, that agreement was contrary to the resolution that estimated its share of the costs for the Traffic Project at $111,000. As a result of the

6

reimbursement agreement, according to Spanish Inn, it was to be reimbursed "substantially less than the approximately $400,000 they should have been reimbursed." Although acknowledging it signed the reimbursement agreement, Spanish Inn alleges it did so only because the City threatened to revoke its permit if it did not do so.[1]

F. *Spanish Inn Defaults on the Loans*

On May 6, 2011, Spanish Inn defaulted on the $6 million and $1.3 million loans by failing to obtain the certificate of occupancy.

On May 15, 2011, the $6 million and $1.3 million loans became due. Spanish Inn defaulted on the $6 million and $1.3 million loans by failing to repay the amounts due.

G. *Foreclosure Proceedings and Instant Action*

On May 27, 2011, Nara recorded a notice of default.

On June 8, 2011, Nara filed this action against Spanish Inn, Kohan, and Ramy. Thereafter, Nara sold the $6 million and $1.3 million loans to Pacifica. As part of the sale, Nara assigned its rights under the deed of trust to Pacifica. The assignment was recorded on August 2, 2011.

On September 1, 2011, Pacifica, as assignee, recorded a notice of sale of the Spanish Inn Hotel, setting the trustee's sale for September 22, 2011 at 9:00 a.m. However, prior to the sale, Spanish Inn filed a chapter 11 bankruptcy petition. The automatic stay thus prevented the trustee's sale from going forward on the date scheduled.

---

[1] As we shall explain, *post*, on appeal Spanish Inn does not assert that the City breached the reimbursement agreement.

Thereafter, the bankruptcy court granted Pacifica relief from the automatic stay, allowing the trustee's sale to be rescheduled. On December 14, 2011, Pacifica purchased Spanish Inn at the trustee's sale.

H. *The Cross-Complaints*

On August 1, 2011, Spanish Inn, Kohan, and Ramy filed their first cross-complaint against Nara, the City of Palm Springs, and three other cross-defendants. Spanish Inn did not name Pacifica as a cross-defendant in its initial cross-complaint. Thereafter, Spanish Inn filed several additional amended cross-complaints, with the last one being the sixth amended cross-complaint, which is the operative pleading in this action.

In the sixth amended cross-complaint Spanish Inn asserted three causes of action against Pacifica, for rescission of the foreclosure, intentional interference with contractual relationship, and intentional interference with prospective economic advantage. The sixth amended cross-complaint alleged four causes of action against the City, for breach of contract, breach of the covenant of good faith and fair dealing, unlawful taking of private property, and indemnity. Spanish Inn's appeal as against the City, however is limited to the breach of contract and breach of the covenant of good faith and fair dealing causes of action. Moreover, Spanish Inn asserts in its opening brief that it "is not contending on appeal that the Reimbursement Agreement was breached by the City."

The court sustained the City's demurrer without leave to amend. In doing so, the court found, as to the causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and indemnification asserted against the City:

8

"[T]he alleged contracts consist of the tentative tract map approval, loan agreement and reimbursement agreement. However the tract map approval is 'legislative adjudicatory' in nature not contractual. [Citation.] The loan agreement required Spanish Inn to timely obtain the certificate of occupancy, which [cross-complainants] allege they did not do. [Cross-complainants] admit they mistakenly included allegations regarding breach of the reimbursement agreement. . . . The twelfth cause of action [for indemnification] is sustained without leave to amend because [cross-complainants] have failed to allege any basis for indemnification. [Cross-complainants] have not and cannot allege facts showing that they are joint tortfeasors."

The court also sustained Nara's demurrer without leave to amend. In doing so, the court found as follows:

"As to the 1st and 2nd causes of action [for breach of contract and breach of the covenant of good faith and fair dealing], [cross-complainants] have failed to plead a breach of contract by Nara. Although these causes of action [are] are titled 'Breach of Contract', [cross-complainants] identify the 'contracts' which were allegedly breached simply as: 'Construction Loan Agreements and other Related Loan Documents.' No further description is provided, not even the dates of the alleged contracts, let alone identification of the parties to the 'contracts' . . . . Further, the 'contracts' referred to in this cause of action are not attached to the pleading, nor are the applicable terms pled verbatim. Although one particular 'Construction Loan Agreement,' dated April 18, 2008, executed only between Spanish Inn and Nara Bank . . . is referred to earlier in the pleading [citation] and is attached to the pleading as Exhibit 'D', the First Cause of Action does not refer to that Exhibit 'D', or indicate that it is the contract that was allegedly breached. Although [cross-complainants] complain about a whole litany of actions by Nara Bank [citation], it is impossible to know whether any of those are actually a breach of contract without the required identification of the contract and its terms. Further, due to the vagueness of the pleading, it is not possible to determine whether the alleged contract is written, oral, or implied. [Citation.] [¶] As to the 3rd cause of action, [cross-complainants] have failed to plead fraud with the requisite specificity. Cross-complainants generally allege that Nara fraudulently induced them to pay additional monies. . . . In addition, in complaints against a corporation, plaintiff must allege the names

9

of the persons who made the misrepresentations and their authority to speak for the corporation. [Citation.] [¶] As to the 12th cause of action, [cross-complainants] have failed to allege any basis for indemnification."

As to Pacifica's demurrer, the court found:

"[Cross-complainants] have failed to allege any basis for rescission. [Cross-complainants] allege only that 'Pacifica and Roes . . . were not bona fide purchasers of the promissory note because they were aware of the claims . . . herein above alleged before they purchased the promissory note.' [Citation.] As noted above, however, [cross-complainants] have failed to allege any viable claims against, presumably, NARA. Moreover, [cross-complainants] have failed to allege a basis for setting aside the trustee's sale. [¶] As to the [interference claims], [cross-complainants] have failed to allege any actions designed to induce a breach of [cross-complainants'] contract with NARA or acts that disrupted [cross-complainants'] relationship with NARA. [Cross-complainants] allege only that Pacifica presented a scheme to NARA under which NARA would withhold funding to [cross-complainants] so that [cross-complainants] would not be able to timely obtain the certificate of occupancy. In other words, Pacifica is alleged to have caused NARA's breach of contract. However, as noted above, [cross-complainants] have not sufficiently alleged a breach of contract by NARA. [¶] As to the 12th cause of action [for indemnity] see the court's discussion on Nara's demurrer."

## DISCUSSION

### I. *STANDARDS GOVERNING DEMURRERS*

When reviewing a demurrer ruling, we determine whether the complaint states a cause of action. (*Moore v. Regents of University of California* (1990 51 Cal.3d 120, 125.) Although we assume that the complaint's well-pleaded allegations are true, we do not assume the truth of conclusions of fact or law. (*Ibid.*) Appellate courts interpret the complaint reasonably by "reading it as a whole and all its parts in their context." (*Ibid.*)

10

Facts appearing in exhibits to a complaint, like well-pleaded allegations in the complaint, are taken as true on demurrer. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.) When the facts in exhibits are contrary to the facts alleged in the complaint, however, the exhibits take precedence. (*Ibid*.)

We need not accept as true allegations that are contradicted by, or inconsistent with, matters subject to judicial notice, including exhibits attached to the complaint. (*Del E. Webb Corp. v. Structural Materials Co*. (1981) 123 Cal.App.3d 593, 604; *Holland v. Morse Diesel Intern., Inc*. (2001) 86 Cal.App.4th 1443, 1447.) Appellate courts may rely on and accept as true the contents of exhibits attached to the complaint and "treat as surplusage the pleader's allegations as to the legal effect of the exhibits." (*Barnett v. Fireman's Fund. Ins. Co*. (2001) 90 Cal.App.4th 500, 505.)

## II. *ANALYSIS*

### A. *Nara's Demurrer*

#### 1. *Breach of contract cause of action*

"To state a cause of action for breach of contract, a party must plead the existence of a contract, his or her performance of the contract or excuse for nonperformance, the defendant's breach and resulting damage. [Citation.] If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.)

Here, the first cause of action against Nara for breach of contract only identifies the contracts sued upon as the "Construction Loan Agreements and other Related Loan

11

Documents."  However, the terms of the alleged "contracts" are not specified, nor are the particular terms that were allegedly breached.  Nor are the alleged contracts attached to the cross-complaint and incorporated by reference.  Accordingly, the court did not err in sustaining Nara's demurrer to this cause of action.

Spanish Inn asserts that because this was Nara's first demurrer, "Spanish Inn was never made aware of these claimed deficiencies and was not afforded the opportunity to remedy these clearly correctable errors."  However, this ignores the fact that the court had previously sustained *Pacifica's* demurrer to that cause of action in the fourth amended cross-complaint, without leave to amend, on the same basis.  Therefore, Spanish Inn had the opportunity to correct this deficiency when it filed its sixth amended cross-complaint against Nara.

In a supplemental letter brief Spanish Inn has cited two cases in support of its breach of contract cause of action against Nara, *California Bank & Trust v. DelPonti* (2014) 232 Cal.App.4th 162, and *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2014) 229 Cal.App.4th 549, that were filed after briefing was completed.  However, those cases are inapposite.

In *California Bank & Trust v. DelPonti, supra,* 232 Cal.App.4th 162, the Court of Appeal was presented with the question of whether a waiver of defenses was enforceable in guarantees.  (*Id.* at p. 166.)  The court there was not presented with the question of whether a breach of contract claim had been adequately alleged in a pleading.

Similarly, *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange, supra,* 229 Cal.App.4th 549 only addressed the well-settled principle that

12

contract terms may be inferred from usage of the parties. (*Id.* at p. 569.) Here, in its cross-complaint, Spanish Inn did not allege that any terms should be inferred in the loan agreements (which, as discussed, are not even identified in the cross-complaint) based upon usage of the parties.

Spanish Inn also cites in its letter brief to two cases decided before the briefing in this matter that it failed to cite in either of its briefs. These cases also do not assist Spanish Inn's position. In *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198-199, the California Supreme Court held that "[i]n an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language." Here, however, not only did Spanish Inn fail to plead the legal effect of the contracts it was suing on, it failed to identify them at all.

Last, in its letter brief, Spanish Inn cites *Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354, 363-368, for the proposition that the covenant of good faith and fair dealing bars a party to a contract from acting in a way that frustrates the other party's ability to receive the benefits of the contract. However, as we discuss, *post*, because Spanish Inn cannot state a cause of action for breach of contract against Nara, it cannot state a claim for breach of the covenant of good faith and fair dealing.

2. *Second cause of action for breach of the covenant of good faith and fair dealing*

A covenant of good faith and fair dealing is implied by law in every contract. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349.) This covenant, however, is tied to the underlying contract from which it arises, and cannot ""be endowed with an

existence independent of its contractual underpinnings.'"'" (*Ibid.*) In other words, the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the *specific terms of their agreement*." (*Id.* at pp. 349-350, italics added.)

Thus, because the breach of contract cause of action was properly dismissed based upon a failure to plead the terms of the contract that were allegedly breached, this cause of action likewise fails.

3. *Third cause of action for fraud*

Our Supreme Court requires fraud claims to be "pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) As our high court explained, "'This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered."' [Citation.] A plaintiff's burden in asserting a fraud claim against a corporat[ion] is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (*Ibid.*)

Here, Spanish Inn has not met the particularity requirement for pleading a fraud claim. In its fraud cause of action Spanish Inn asserts, "Cross Complainants received repeated assurances that Nara Bank would promptly honor draws resulting from construction work at the Project, and consistent with its prior custom and practice, extend the Maturity Date if necessary . . . ." Spanish Inn further alleges, "Nara Bank also represented that it would Reallocate the Funds as necessary to enable Cross Complainants

14

to complete construction and obtain the Certificate of Occupancy." However, there are no allegations containing the names of the persons who on behalf of Nara made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when the representations were said or written. Therefore, the court did not err in sustaining Nara's demurrer to this cause of action.

B. *Pacifica's Demurrer*

1. *Fourth cause of action for "rescission" and restitution*

"Civil Code sections 2924 through 2924k . . . govern nonjudicial foreclosure sales pursuant to a power of sale contained in a deed of trust. 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. [Citation.]' [Citation.] '[T]he statutory scheme also evidences an intent that a properly conducted sale be a final adjudication of the rights of the creditor and debtor [citations] and the sanctity of title of a bona fide purchaser be protected.'" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813-814.)

"'The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser.'" (*Biancalana v. T.D. Service Co., supra,* 56 Cal.4th at p. 814.)

15

Moreover, "[o]nce the [trustee's sale is completed], the trustor has no redemption rights." (*Ballengee v. Sadlier* (1986) 179 Cal.App.3d 1, 5.) Absent a "failure to comply with some required procedure which deprive[s] the trustor of his right of reinstatement or redemption," trustee's sales cannot be set aside or rescinded. (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 831.)

Spanish Inn asserts that it is entitled to rescind the foreclosure because when it purchased the promissory note from Nara, Pacifica was not a bonafide purchaser because it knew of Spanish Inn's claims at the time of the sale. Specifically, Spanish Inn asserts that, "[b]y virtue of the allegations alleged herein, [Nara] was not legally justified in declaring [Spanish Inn] in default under the promissory note," and therefore Pacifica, as Nara's successor, was also not entitled to foreclose. This contention is unavailing.

As we have discussed, *ante*, Spanish Inn has not alleged any viable claims against Nara. Therefore, it cannot set aside the foreclosure by Pacifica based upon alleged wrongdoing by its predecessor, Nara.

2. *Fifth and sixth causes of action for interference with contract and prospective economic advantage*

The elements of a claim of intentional interference with contractual relations are: "'(1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.) The elements of a claim for intentional interference with prospective economic

16

advantage are the same, except that instead of a contract between the plaintiff and a third party, there must exist between the plaintiff and a third party an economic relationship with the probability of future economic benefit to the plaintiff.  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.)

Causation is an essential element of a claim of intentional interference with contractual relations (as well as a claim of intentional interference with prospective economic advantage).  (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 391.)  To establish causation, a plaintiff must prove that "but for" a defendant's interference, the plaintiff's contractual relationship with a third party would not have been disrupted and plaintiff would not have sustained the alleged losses.  (*Korea Supply Co. v. Lockheed Martin Corp., supra*, 29 Cal.4th at pp. 1165-1166; *Quelimane Co. v. Stewart Title Guaranty Co., supra*, 19 Cal.4th at p. 55; *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 271.)

Here, the cross-complaint fails to allege any facts that support Spanish Inn's allegation that Pacifica undertook intentional acts designed to induce a breach or disruption in Nara Bank's contractual relationship with Spanish Inn.  Spanish Inn only asserts that Pacifica induced "NARA BANK to engage in acts that would prevent SPANISH INN from timely completing the project."  The cross-complaint also alleges that Pacifica "presented a scheme to NARA BANK under which NARA BANK would withhold funds from SPANISH INN with the expectation that SPANISH INN would not be able to meet the deadline for obtaining the Certificate of Occupancy, thus allowing NARA BANK to declare SPANISH INN in default."

17

However, Spanish Inn alleges no *facts* to support either of these allegations. Moreover, because Pacifica was the successor to Nara on the loan, it would be impossible for Pacifica to interfere with Spanish Inn's relationship with Nara. Further, Spanish Inn does not allege what the inducement involved was or when it occurred. Finally, as we have discussed, *ante*, Spanish Inn has not alleged any facts showing that Nara breached any provision in any agreement with Spanish Inn. Therefore, because there was no breach, there could be no inducement by Pacifica.

C. *The City's Demurrer*

Spanish Inn contends that the City breached two agreements: Resolution No. 21388 (the tentative map approval) and the March 2010 Loan Agreement.[2] These contentions are unavailing.

1. *Resolution No. 21388*

Spanish Inn contends that Resolution No. 21388 amounts to a contract because it imposed conditions upon Spanish Inn requiring offsite street work and further annunciated Spanish Inn's right to seek partial reimbursement of its total cost of construction. This contention is unavailing.

Municipal land use approvals such as the tentative map approval in Resolution No. 21388 are not contractual agreements, but constitute an exercise of the City's police power under article XI, section 7 of the California Constitution. (*Bownds v. City of*

---

[2] The seventh cause of action also alleged that the City breached the reimbursement agreement. However, as previously noted, Spanish Inn has elected not to appeal this portion of the trial court's ruling.

18

*Glendale* (1980) 113 Cal.App.3d 875, 879 ["Land use regulation in California has historically been a function of local government under the grant of police power contained in California Constitution, article XI, section 7."].)

Under Government Code section 66474, a municipality may approve, or conditionally approve, a tentative subdivision map and when it does so, it is acting in a quasi-judicial capacity. (*Griffis v. County of Mono* (1985) 163 Cal.App. 3d 414, 426 ["approval of a tentative subdivision map . . . is an *adjudicatory* administrative decision"].) Thus, the City's adoption of Resolution No. 21388 did not create a contract as to the offsite improvements.

Spanish Inn asserts that if Resolution No. 21388 is not a contract then that means that local agencies such as the City may escape any financial liability for the street improvements. However, the City's responsibility for collecting shares from the adjoining landowners is governed by the terms of the reimbursement agreement. However, as noted, *ante*, Spanish Inn has not challenged that agreement on appeal, and therefore this issue has been waived.

2. *The loan agreement*

In its seventh cause of action for breach of contract, Spanish Inn alleges that the City breached its loan agreement with Spanish Inn by "terminating the Loan Agreement and failing to disburse loan proceeds to Cross-Complainants after preventing Cross-Complainants from performing a condition precedent to disbursement . . . ." Spanish Inn further alleges that, "[as] a direct and proximate result of City's conduct and breach of its agreements . . . Cross-Complainants . . . were unable to pay all of their subcontractors and

19

material suppliers, unable to complete construction of the SPANISH INN project, and ultimately lost the project . . . ."

As we have discussed, *ante*, where a cause of action is based upon a written contract, "the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference." (*Harris v. Rudin, Richman & Appel, supra,* 74 Cal.App.4th at p. 307.) Spanish Inn's failure to do so dooms its breach of contract claim against the City.

Moreover, the City's obligation to make loan disbursements under its loan agreement with Spanish Inn arose only upon Spanish Inn's performance of several conditions, including Spanish Inn's completion of the project. Spanish Inn's own allegations in the cross-complaint demonstrate it had no financial capacity to complete the project because of its dispute with Nara Bank over funding obligations. It was Spanish Inn's difficulty with Nara Bank in obtaining ongoing progress payments which caused the failure to meet the condition precedent of obtaining a certificate of occupancy by the loan agreement's deadline of May 6, 2011. Thus, Spanish Inn failed to allege a required element of its breach of contract cause of action: that the City's actions caused the damages Spanish Inn allegedly suffered.

Moreover, because Spanish Inn cannot state a cause of action for breach of contract, its cause of action against the City for breach of the covenant of good faith and fair dealing fails as well.

20

DISPOSITION

The judgment is affirmed.  Cross-defendants shall recover their costs on appeal.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

21