175 Cal.App.4th 1535 (2009)
ROBERT D. WHITE et al., Plaintiffs and Appellants,
v.
TERRY E. HARPER CRIDLEBAUGH et al., Defendants and Respondents.
No. F053843.
Court of Appeals of California, Fifth District.
July 29, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*1538 Ana M. Soares for Plaintiffs and Appellants.
No appearance for Defendants and Respondents.

OPINION
DAWSON, J. 
Homeowners sued a building contractor, supplier, surety, and individuals involved in the construction of their retirement home for breach of contract, negligence, fraud, and violations of California's licensure requirements. The trial court allowed certain theories against the building contractor to go to the jury but granted nonsuit and directed verdicts on the rest. The jury then found against the homeowners and for the building contractor. After entry of judgment against the homeowners, they appealed.
In the published portion of this opinion, we conclude the corporation that acted as the building contractor on the project violated California's licensure requirements and, based on that violation, the homeowners are entitled under Business and Professions Code section 7031, subdivision (b) (section 7031(b))[1] to recover all compensation paid to the contractor for the unlicensed work. Also, as a matter of statutory construction, we conclude that the recovery authorized by section 7031(b) may not be reduced by an unlicensed contractor's claim of offset for materials and services provided in connection with the unlicensed work. We note that the latter conclusion qualifies for publication because, among other things, some secondary authorities create the impression that an unlicensed contractor may assert offset as a defense to the liability imposed by section 7031(b).
In the unpublished portion of this opinion, we conclude that (1) the homeowners' pleading adequately stated their section 7031(b) reimbursement claim, (2) the homeowners failed to demonstrate the trial court committed reversible error in granting nonsuit on certain claims and directed verdicts on others, (3) the trial court's determinations regarding alter ego are supported by substantial evidence, (4) the trial court's exclusion of certain testimony under Evidence Code section 352 was not an abuse of discretion, (5) the surety was liable on its bond because of the contractor's statutory liability under section 7031(b), and (6) the homeowners, as the prevailing parties, are entitled to recover their court costs from the contractor and the surety.
Accordingly, the judgment will be modified.

*1539 FACTS AND PROCEEDINGS
Robert D. White (White) and Carole K. White wanted to build a retirement home on an empty lot in Pine Mountain Club, California. Terry E. Harper Cridlebaugh (Cridlebaugh), Vickie Harper Cridlebaugh, Robert Paul Diani, JC Master Builders, Inc., and Building Technology are individuals and entities involved in the initial phases of building that home. Surety Company of the Pacific provided the contractor's bond for JC Master Builders, Inc.

The Construction Project
The Whites purchased the empty lot in Pine Mountain Club in 2005 for the purpose of building their retirement home. The Whites had been looking at log homes for a number of years, and White obtained estimates on log home packages.
The Whites met the Cridlebaughs at church. In February 2006 or earlier, Carole White attended a women's prayer meeting at their church and Vickie Cridlebaugh told her that they, the Cridlebaughs, desperately needed work. They prayed about it and decided that since the Whites needed to have a house built and the Cridlebaughs needed work, it might be a good fit. The Whites also went and looked at a log home that Cridlebaugh was building.
When they reached the point of entering a contract, White suggested a time and materials contract. Cridlebaugh drafted an initial contract which, after making a few changes, the parties signed on March 14, 2006. Prior to signing the contract, the parties reviewed the plans and specifications for the project. Although the contract listed the owners as the general contractor, White testified that his understanding with Cridlebaugh was that Cridlebaugh would do the actual work on the site and was responsible for reading the plans and doing the work on the drawings. They also discussed the foundation, which "was a slab on grade walkout first floor."
In March 2006, Cridlebaugh began work by clearing brush from the site. The rough grading was complete by April 21st. About that time, White became concerned with the amount of excavating that Cridlebaugh was doing and asked him to get a soils engineer to test the site. Cridlebaugh responded that he would know when to get a soil test.
Cridlebaugh excavated to a depth of seven feet or more. He testified that the excavation was necessary because of the topsoil, the slope, and Kern County grading regulations. He also testified the excavation was consistent with the elevations indicated on the plans, which showed that the soil at one corner of the house was six and a half feet lower than an uphill corner. In *1540 contrast, the Whites contend that the pad staking document prepared by Prewitt Land Surveying indicated a cut and fill excavation for the slab-on-grade pad for the first floor and that Cridlebaugh did not follow that document or the other plans. Also, White testified that JC Master Builders, Inc., substantially exceeded the budget that he, White, had established for site preparation.
White's concerns led him to request Cridlebaugh to subcontract the grading work to L & M Construction, which was familiar with the area and had equipment on the hill where the Whites' lot was located. White also asked Cridlebaugh to get a rebar contractor to do the rebar because Cridlebaugh did not have anyone experienced to do the work. White was concerned with paying Cridlebaugh to drive back and forth between the jobsite and Frazier Park, which is where Cridlebaugh bent the rebar. White believed the rebar should be bent on site.
White also was concerned with the billings he received from JC Master Builders, Inc., which he considered convoluted. For example, Cridlebaugh would convert the time of laborers he hired into time that was billed at his hourly rate. Cridlebaugh said it was easier to do on his computer than having a separate hourly rate for each laborer. With respect to billing for materials, the invoices showed a lump sum instead of indicating how many units of the material were used and the cost per unit. Also, the invoices indicated the source of the material was Building Technology[2] and did not state where the items had been purchased. White asked Cridlebaugh for the invoices from the suppliers at least five times but they were not provided. White was concerned that unpaid suppliers might place a lien on the lot.
Through mid-May 2006 White paid the bills of JC Master Builders, Inc., because "I had no reason to believe that they would not perform and keep their agreement to operate the business with ... integrity ...."
On June 19, 2006, White sent Cridlebaugh a memo confirming his oral instructions to Cridlebaugh to stop all construction activities until he provided the original documents requested by White to verify the billings. On June 22, 2006, White sent Cridlebaugh a letter stating that the relationship was finished. White testified that Cridlebaugh finished returning rebar and then stopped work.
On July 14, 2006, JC Master Builders, Inc., filed a mechanic's lien in the amount of $13,561.62 against the Whites' lot.

*1541 Contractor's License

A July 2006 printout from the Web site of the Contractors' State License Board indicated that JC Master Builders, Inc., was a corporation with a class A (general engineering contractor) and class B (general building contractor) license that was issued in October 2002 and would expire in October 2006. The contractor's license was No. 814144. The printout listed the contractor's bond as No. 6059576 issued by Surety Company of the Pacific in the amount of $10,000. The printout identified Robert Paul Diani as the qualifying individual and the responsible managing officer, who had certified that he owned 10 percent or more of the voting stock of the corporation.
Diani testified that (1) he was the registered owner of JC Master Builders, Inc., (2) he had been an absentee officer of the corporation, and (3) he had turned over any dealings and daily work of JC Master Builders, Inc., to Cridlebaugh. Diani went to Peru in 2004 to act as an independent missionary. In the two and a half years before his deposition, Diani had returned to the United States twice.
The last time Diani had taken active control of JC Master Builders, Inc., was prior to leaving in August 2004 and after that he had left all management and supervision decisions to Cridlebaugh. For example, Diani had not discussed the contract between the Whites and JC Master Builders, Inc., with Cridlebaugh until after the lawsuit was filed. Also, Diani had not been aware that Cridlebaugh had used JC Master Builders, Inc., to sue the Whites and place a mechanic's lien on their property.
Cridlebaugh has never held a California contractor's license.

Ownership and Control of JC Master Builders, Inc.
Diani testified that (1) he did not own any stock in JC Master Builders, Inc., (2) "Terry should own the stock," (3) he gave the stock to Cridlebaugh, and (4) he did not have any documents showing such a transfer of stock.
Cridlebaugh testified that he did not own any voting stock in JC Master Builders, Inc., and that Diani owned all of the voting stock. Cridlebaugh testified that JC Master Builders, Inc., held board of directors meetings and that Diani and he attended those meetings. Diani testified that board meetings had not been held in the last couple of years.
Cridlebaugh identified his roles with JC Master Builders, Inc., as chief financial officer, secretary, and employee.
*1542 Diani also testified that he did not receive any compensation or profits from JC Master Builders, Inc., and stated that he hoped Cridlebaugh was making an income from JC Master Builders, Inc., because that was why he let Cridlebaugh use the license.

PROCEEDINGS
In early August 2006, the Whites filed a complaint. Their operative pleading in this case is a second amended complaint that alleged 10 causes of action and named the Cridlebaughs, Diani, JC Master Builders, Inc., Building Technology, and Surety Company of the Pacific as defendants. The causes of action were labeled (1) breach of contract, (2) negligence, (3) breach of express and implied warranties, (4) strict liability, (5) fraud, fraudulent transfer and concealment, (6) intentional and negligent misrepresentation, (7) construction and trade practice, state license law and action against surety, (8) punitive damages, (9) attorney fees and costs, and (10) alter ego theory.
In October 2006, JC Master Builders, Inc., filed a complaint against the Whites for breach of contract, quantum meruit, and foreclosure of the mechanic's lien for $13,561.62 it recorded against the Whites' parcel in mid-July 2006 (the mechanic's lien action).
The Whites filed a demurrer to JC Master Builders, Inc.'s complaint in the mechanic's lien action, contending the claims should have been asserted as a cross-complaint in their lawsuit. In January 2007, the trial court ordered the two actions consolidated, with the Whites' action being the lead case.
The jury trial began on July 2, 2007. The next day, the trial court held an Evidence Code section 402 hearing on defendants' motion in limine to exclude the testimony of Robert Rosen. Rosen also had entered into a contract with JC Master Builders, Inc., had become embroiled in a dispute with the company and Cridlebaugh, and had had a mechanic's lien recorded against his property. Counsel for the Whites argued that Rosen's experience shared 11 points in common with the Whites', and Rosen's testimony demonstrated a common plan or design, which qualified it for an exception to the general exclusion of character evidence contained in Evidence Code section 1101.[3] At the end of the hearing, the trial court granted the motion and excluded the testimony of Rosen.
The Whites rested their case on July 9, 2007. Defendants began their case with Cridlebaugh's testimony, but the testimony was interrupted when the *1543 trial court considered two motions. First, the trial court denied as premature the Whites' motion for a directed verdict. Second, the trial court heard arguments on defendants' written motion for judgment of nonsuit. The court granted the motion for nonsuit on the fraudulent transfer and breach of express warranty claims and denied it as to all other claims.
On July 10, 2007, the testimony of Cridlebaugh was completed and the defense rested its case. The trial court admonished the jurors, told them to report at 1:00 p.m. the next day, and then discussed evidentiary issues with counsel. The court also severed the alter ego claim from the claims to be presented to the jury.
The next morning, counsel for the Whites filed a motion under Code of Civil Procedure section 630 for relief under Business and Professions Code section 7031. After hearing arguments on the motion and taking a recess to review the authorities cited, the trial court granted the Whites' motion for a directed verdict in the mechanic's lien action. The trial court orally explained its ruling as follows: "[I]t's not a matter of equity, it's not a matter of balance, it's a matter of policy behind the licensing laws and the results are harsh. They have become harsher since 200[1] with the amendment to that section because the Court's motion for directed verdict will include not only a judgement [sic] for dismissal of the affirmative claims of JC Master Builders, an order to dissolve the mechanic's lien, but an order for disgorgement of all amounts received under the contract by JC Master Builders; that being the $84,000 and change as provided in [section 7031(b)]. The sub paragraph speaking to recovery by the owner of the property."
The trial court discussed the potential harshness of this result, recognizing that the jury could conclude from the evidence and arguments that JC Master Builders, Inc., had done a good job and an appropriate job with the Whites getting a better place than originally contemplated.
In the afternoon, the trial court instructed the jury, and counsel for the parties presented their closing arguments. Out of the presence of the jury, the trial court heard argument on the issues relating to the alter ego claims and took that matter under submission.
The jury returned its verdict during the afternoon of July 12, 2007. The verdict forms set forth the jury's findings with respect to specific questions regarding (1) breach of contract, (2) negligence, (3) intentional misrepresentation, (4) concealment, and (5) negligent misrepresentation.
The jury found JC Master Builders, Inc., did not conceal an important fact from the Whites or make a false representation of an important fact to the *1544 Whites. The jury also found for JC Master Builders, Inc., on the breach of contract claim, specifically finding (1) the Whites did not do substantially all of the things the contract required and (2) they were not excused from doing those things.
The jury determined JC Master Builders, Inc., was negligent, but the negligence was not a substantial factor in causing harm to the Whites. The verdict form for negligent misrepresentation shows the jury found that JC Master Builders, Inc., falsely represented an important fact to the Whites without a reasonable ground for believing the representation was true. The jury, by a 10-to-two vote, found JC Master Builders, Inc., did not intend the Whites to rely on the misrepresentation. As a result, the jury did not address whether the Whites reasonably relied on the misrepresentation or whether the misrepresentation was a substantial factor in causing harm to the Whites.
On July 16, 2007, the trial court filed a judgment on verdict, directed verdicts, and court's judgment on alter ego. The document (1) stated judgment was granted for the Whites in the mechanic's lien action based on the order granting their motion for directed verdict against JC Master Builders, Inc.; (2) ordered the mechanic's lien dissolved; and (3) pursuant to section 7031(b), stated JC Master Builders, Inc., was to reimburse the Whites $84,621.45, plus interest from and after July 1, 2006.
The document granted judgment in the Whites' action as follows. JC Master Builders, Inc., was granted judgment in its favor on all of the Whites' claims submitted to the jury. The Cridlebaughs, Diani, and Building Technology received judgment in their favor and against the Whites on all causes of action, except the seventh and 10th, based on the orders granting motions for nonsuit and directed verdict. On the 10th cause of action (alter ego), defendants received judgment in their favor based on the trial court's determination that the Whites did not carry their burden of proof. Surety Company of the Pacific was granted judgment in its favor and against the Whites on the seventh cause of action.
The parties subsequently filed memoranda of costs. The Whites requested costs totaling $7,764.10 and defendants requested costs totaling $10,688.79. Each side also filed a motion to tax the costs requested by the other side. Ultimately, the trial court determined that the parties would bear their own costs.
In August 2007, each side filed a motion for new trial. Defendants also filed a motion for judgment notwithstanding the verdict. The trial court heard argument on these motions in late August, took them under submission, and issued its ruling on September 10, 2007.
*1545 The ruling is set forth in the register of action/docket that is part of the appellate record. The trial court denied both motions for a new trial and partially denied defendants' motion for judgment notwithstanding the verdict. The partial grant of JC Master Builders, Inc.'s motion for judgment notwithstanding the verdict vacated the prior judgment granting the Whites reimbursement of the money paid to JC Master Builders, Inc., which reimbursement was the only recovery the Whites had achieved in the litigation.
Also on September 10, 2007, the trial court filed an amended judgment on verdict, directed verdicts, and court's judgment on alter ego that reflected its rulings on the posttrial motions.
The Whites filed a notice of appeal and an amended notice of appeal later that month. The Whites filed an opening brief in September 2008. Defendants did not file a brief.[4]

DISCUSSION

I. Reimbursement Under Section 7031(b)

A. Contentions and Issues Raised on Appeal

The Whites contend that the trial court erroneously granted JC Master Builders, Inc.'s motion for judgment notwithstanding the verdict on their claim for reimbursement under section 7031(b). They argue that the trial court correctly granted their motion for a directed verdict on that claim and request this court to reinstate the reimbursement award.
The trial court's reason for vacating the portion of the judgment that granted the Whites reimbursement is set forth in the register of actions: "Section 7031(b) specifically requires an affirmative claim be brought in court for such relief, i.e., reimbursement or disgorgement of compensation. The Whites never plead for that affirmative relief nor sought, timely or otherwise, to amend to seek such relief. J.C. Master Builders has been prejudiced by the lack of opportunity to litigate, at the very least, issues of offset and indemnity/contribution. [Citations.]"[5] (Some capitalization omitted.)
*1546 Based on the trial court's reasoning, the contentions raised by the Whites, and the lack of a respondents' brief, we conclude the issues presented to this court are (1) whether the Whites properly brought a claim for reimbursement under section 7031(b) and (2) whether JC Master Builders, Inc., suffered prejudice, including the lack of opportunity to litigate issues of offset, indemnity and contribution. The first issue can be divided into two subissues: (1) Were the Whites, seeking reimbursement or disgorgement, required to plead specifically for such relief and (2) did the Whites' pleadings adequately allege the right to recover under section 7031(b)?

B. Background on License Requirements for Contractors

1. Licensure requirement

(1) The Contractors' State License Law (CSLL), section 7000 et seq., is a comprehensive legislative scheme governing the construction business in California. The CSLL provides that contractors[6] performing construction work must be licensed unless exempt. (§§ 7026 et seq., 7040 et seq.) "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]" (Hydrotech Systems, Ltd. v. Oasis Waterpark (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370].) The licensing requirement and the penalties for violating that requirement are designed to protect the public from incompetent or dishonest providers of building and construction services. (Ibid.)
When a corporation, such as JC Master Builders, Inc., applies for a contractor's license, it must qualify through either a "responsible managing officer" (RMO) or "responsible managing employee" (RME), who is, himself or herself, eligible for the same license qualification. (§ 7068, subd. (b)(3).) The "qualifier" RMO or RME must be a bona fide officer or employee of the corporation and actively engaged in work encompassed by the license. (§ 7068, subd. (c).)
(2) Under section 7068.2, if the qualifier is disassociated from the licensed entity, the entity has 90 days to replace the qualifier. If the qualifier *1547 is not replaced, the contractor's license issued to the entity is automatically suspended. (Ibid.; Wright v. Issak (2007) 149 Cal.App.4th 1116, 1123 [58 Cal.Rptr.3d 1].)
In this case, JC Master Builders, Inc., was not qualified for a contractor's license because (1) Diani was not actively engaged in its construction business after August 2004, (2) Cridlebaugh did not have a contractor's license, and (3) no replacement was ever qualified in Diani's place. Therefore, JC Master Builders, Inc.'s contractor's license was suspended by operation of law. (§ 7068.2.)

2. Penalties applied to unlicensed contractors

(3) The CSLL encourages licensure by subjecting unlicensed contractors to criminal and civil penalties. The criminal provisions state it is a misdemeanor for a person without a license or an exemption to act in the capacity of a contractor. (§ 7028, subd. (a).) The civil penalties affect the unlicensed contractor's right to receive or retain compensation for unlicensed work.

a. The shieldcollection actions prohibited

The CSLL shields persons who utilize the services of an unlicensed contractor from lawsuits by that contractor to collect payment for unlicensed work. Specifically, subdivision (a) of section 7031 provides: "Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."[7]
(4) The California Supreme Court has given a broad, literal interpretation to the shield provision in section 7031: "Where applicable, section 7031(a) bars a person from suing to recover compensation for any work he or she did under an agreement for services requiring a contractor's license unless proper licensure was in place at all times during such contractual performance." (MW *1548 Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc. (2005) 36 Cal.4th 412, 419 [30 Cal.Rptr.3d 755, 115 P.3d 41].) The Legislature's use of the phrase "in law or equity" and the unqualified terms "any" and "all" mean that section 7031, subdivision (a) applies "[r]egardless of the equities." (Hydrotech Systems, Ltd. v. Oasis Waterpark, supra, 52 Cal.3d at p. 997.) The statutory language demonstrates the Legislature's "intent to impose a stiff all-or-nothing penalty for unlicensed work ...." (MW Erectors, Inc., supra, at p. 426.) The statute's harsh results are justified by the importance of deterring violations of the licensing requirements. (WSS Industrial Construction, Inc. v. Great West Contractors, Inc., supra, 162 Cal.App.4th at p. 596.)

b. The sworddisgorgement of pay for unlicensed work

In 2001, the Legislature complemented the shield created by subdivision (a) of section 7031 by adding a sword that allows persons who utilize unlicensed contractors to recover compensation paid to the contractor for performing unlicensed work. (Stats. 2001, ch. 226, § 1.) Section 7031(b) provides that "a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract" unless the substantial compliance doctrine applies. (Italics added.) This provision was explained in part by an April 2001 Assembly Committee analysis of the bill, which stated:
"According to the sponsor, this measure is intended to address the recent case of Cooper v. Westbrook Torrey Hills, LP (2000) 81 Cal.App.4th 1294 [97 Cal.Rptr.2d 742], in which the court, in an unpublished portion of the opinion, referred to Section 7031(a) prohibiting an unlicensed contractor from recovering fees, but not requiring any refund of compensation already paid to the contractor. Cooper relied on Culbertson v. Cizek (1964) 225 Cal.App.2d 451, 473 [37 Cal.Rptr. 548], in which the court permitted the unlicensed contractor to offset `as a defense against sums due the plaintiffs any amounts that would otherwise be due Cizek under his contract.' This measure is intended to clearly state that those using the services of unlicensed contractors are entitled to bring an action for recovery of compensation paid. [¶] . . . [¶]
"AB No. 678 constitutes an additional and consistent legislative determination that such deterrence can best be realized by compelling violators to return all compensation received from providing their unlicensed services. That rationale is reflected in the judicial decisions involving rejected attempts by unlicensed contractors to obtain payment based on knowledge of their unlicensed status by persons sued for non-payment of services rendered. That policy is furthered in AB No. 678 by specifically recognizing the capacity of *1549 an owner to recover money already paid an unlicensed contractor, even if the person knew the contractor was unlicensed." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 678 (2001-2002 Reg. Sess.) as introduced Feb. 22, 2001, pp. 2-3, at [as of July 29, 2009], underscoring omitted, italics added.)
(5) It appears section 7031(b) was designed to treat persons who have utilized unlicensed contractors consistently, regardless of whether they have paid the contractor for the unlicensed work. In short, those who have not paid are protected from being sued for payment and those who have paid may recover all compensation delivered. Thus, unlicensed contractors are not able to avoid the full measure of the CSLL's civil penalties by (1) requiring prepayment before undertaking the next increment of unlicensed work or (2) retaining progress payments relating to completed phases of the construction.

C. Pleading Requirements When Seeking Reimbursement[*]

D. Prejudice and Opportunity to Litigate Offset

Can judgment for JC Master Builders, Inc., on the Whites' section 7031(b) claim be upheld on the ground that JC Master Builders, Inc., was prejudiced by the lack of opportunity to litigate the issues of offset, indemnity, or contribution? This question raises the following specific question of statutory interpretation: May the recovery of compensation authorized by section 7031(b) be reduced by offsets for materials and services provided or by claims for indemnity and contribution?[8] We conclude it cannot.

1. Standard of review

Issues of statutory construction are pure questions of law subject to independent review by appellate courts. (Neilson v. City of California City (2007) 146 Cal.App.4th 633, 642 [53 Cal.Rptr.3d 143].)

2. Statutory construction

(6) We conclude the authorization of recovery of "all compensation paid to the unlicensed contractor for performance of any act or contract" *1550 (§ 7031(b), italics added) means that unlicensed contractors are required to return all compensation received without reductions or offsets for the value of material or services provided. (Goldstein v. Barak Construction (2008) 164 Cal.App.4th 845, 856 [79 Cal.Rptr.3d 603] [dicta states beneficiary of services of unlicensed contractor may invoke CSLL against offset by the contractor].)
Our interpretation, and that of the Goldstein court, is consistent with the usual meaning of the word "all," which signifies the whole number and does not admit of an exception or exclusion not specified. (Stewart Title Co. v. Herbert (1970) 6 Cal.App.3d 957, 962 [96 Cal.Rptr. 631].) In short, "all compensation paid" does not mean all compensation less reductions for offsets, equitable indemnity, and contribution.
Our use of the plain and usual meaning of the word "all" is consistent with the reference to offsets in the legislative materials quoted in part I.B.2.b., ante, as well as the statement that "deterrence can best be realized by compelling violators to return all compensation received from providing their unlicensed services." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 678, supra, p. 3.) If reductions for offset, indemnity, and contribution were allowed, deterrence of unlicensed work would be diminished.
We recognize the court in Holland v. Morse Diesel Internat., Inc. (2001) 86 Cal.App.4th 1443 [104 Cal.Rptr.2d 239] stated that "in many cases unlicensed contractors have been permitted to raise sums due to them as an offset in defense of an action against them. [Citations.]" (Id. at p. 1453.) Holland and the cases it cites, however, were decided before the current subdivision (b) was added to section 7031 in 2001. Consequently, those cases have no bearing on the meaning of section 7031(b) and, thus, create no direct conflict with the interpretation adopted in Goldstein and here.
Our interpretation of section 7031(b) means that certain principles of law set forth in cases decided before the enactment of Assembly Bill No. 678 (2001-2002 Reg. Sess.) have been abrogated, at least to the extent they suggest claims for offset can be asserted defensively to reduce or defeat a claim for reimbursement of compensation paid. (2 Schwing, Cal. Affirmative Defenses (2009 ed.) § 39:18, pp. 900-901, fns. 13, 14 & accompanying text.) For example, it would be inaccurate to state that the CSLL allows an unlicensed contractor to respond to a claim for reimbursement by "setting up as a defense any sums which may be equitably due him from the plaintiff upon [the] illegal contract [for building services]." (Marshall v. Von Zumwalt, supra, 120 Cal.App.2d at p. 810.) Similarly, "`cases permitting an unlicensed contractor to assert a setoff based on a contract for building services, notwithstanding that the contract is otherwise unenforceable due to the *1551 absence of a license'" (Ranchwood Communities Limited Partnership v. Jim Beat Construction Co., supra, 49 Cal.App.4th at p. 1411), should not be extended to reimbursement claims under section 7031(b).[9]
(7) We conclude section 7031(b)'s reference to the recovery of all compensation paid an unlicensed contractor means the unlicensed contractor cannot reduce the recovery authorized by asserting claims of offset, indemnity, or contribution arising out of the unlicensed work.

E. Conclusion

The trial court correctly granted the Whites' motion for a directed verdict against JC Master Builders, Inc., on their section 7031(b) claim for reimbursement of the $84,621.45 in compensation paid. Consequently, we will modify the judgment to include that award of reimbursement.

II.-V.[*]

DISPOSITION
The judgment filed September 10, 2007, is modified by deleting the second to last paragraph, which references the seventh cause of action, and replacing it with the following: "On the seventh cause of action, judgment is granted (1) in favor of plaintiffs and against defendant JC Master Builders, Inc., in the amount of $74,621.45, plus interest from and after July 1, 2006, and (2) in favor of plaintiffs and against defendants Surety Company of the Pacific and JC Master Builders, Inc., jointly and severally, in the amount of $10,000, plus interest from and after July 1, 2006. Thus, the judgment against defendant JC Master Builders, Inc., totals $84,621.45, plus interest. Defendants Surety Company of the Pacific and JC Master Builders, Inc., are jointly and severally liable for plaintiffs' court costs." As modified, the judgment is affirmed.
The superior court is directed to vacate its order granting in part and denying in part JC Master Builders, Inc.'s motion for judgment notwithstanding the verdict and enter a new order denying that motion.
*1552 JC Master Builders, Inc., and Surety Company of the Pacific shall be jointly and severally liable for the Whites' costs on appeal.
Levy, Acting P. J., and Cornell, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.C., II., III., IV. and V.
[1] All further unlabeled statutory references are to the Business and Professions Code.
[2] Cridlebaugh informed White that he owned Building Technology jointly with his wife Vickie.
[3] Rosen's project also involved construction of a log home and was located in nearby Lebec, California. The Whites contend Cridlebaugh employed the same tactics on Rosen, which included using Building Technology to double-charge Rosen, violating the contractor's license requirements on that project, and filing a mechanic's lien on Rosen's house after completion.
[4] In late December 2008, the clerk of this court sent counsel for defendants the notice required by California Rules of Court, rule 8.220(a)(2), which stated that the appeal might be submitted for decision on the record and opening brief if a respondent's brief was not filed within 15 days. In mid-January and again in mid-February, this court granted defendants 30-day extensions to file their brief, the last of which stated no further extensions would be granted absent exceptional circumstances.
[5] The two cases cited by the trial court were Ranchwood Communities Limited Partnership v. Jim Beat Construction Co. (1996) 49 Cal.App.4th 1397 [57 Cal.Rptr.2d 386] and Marshall v. Von Zumwalt (1953) 120 Cal.App.2d 807 [262 P.2d 363], both of which predate the 2001 amendment that added current section 7031(b) to the Contractors' State License Law (§ 7000 et seq.). (See fn. 9 & accompanying text, post.)
[6] Section 7026 defines "contractor" to include "any person who ... does himself or herself or by or through others, construct . . . any building ...." The term "person" is defined broadly to include "an individual, a firm, copartnership, corporation, association or other organization, or any combination of any thereof." (§ 7025.)
[7] The exception in subdivision (e) of section 7031 concerns situations where the contractor has substantially complied with the licensure requirement. The exception is narrowly drawn and has been described as rigid. (WSS Industrial Construction, Inc. v. Great West Contractors, Inc. (2008) 162 Cal.App.4th 581, 594, fn. 8 [76 Cal.Rptr.3d 8].) It is not relevant in this litigation.
[*] See footnote, ante, page 1535.
[8] This issue concerning the relationship between section 7031(b), which was added to the CSLL in 2001, and the defensive use of offset is noted in California Forms of Jury Instruction (2009) Construction Contract, section MB300I.59[3][e], page 3I-132: "It is unclear whether the amended statute supersedes earlier decisions holding that an unlicensed contractor can assert his or her claim as an offset [citation]."
[9] Some secondary authorities mention the principles concerning offset stated in the older cases without describing the impact of the 2001 amendment to section 7031. (E.g., 10 Miller & Starr, Cal. Real Estate (3d ed. 2001) Mechanics' Liens, § 28:19, p. 72, fn. 1 & accompanying text; 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) ¶ 2:133.5, p. 2-39; 11 Cal.Jur.3d (2006) Building and Construction Contracts, § 214, pp. 228-229, fn. 5 & accompanying text; see 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 442, pp. 483-484, citing Culbertson v. Cizek, supra, 225 Cal.App.2d 451.)
[*] See footnote, ante, page 1535.