Filed 8/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EISENBERG VILLAGE OF THE LOS ANGELES JEWISH HOME FOR THE AGING,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SUFFOLK CONSTRUCTION COMPANY, INC.,<br><br>Defendant and Respondent. | B297247<br><br>(Los Angeles County Super. Ct. No. LC100462) |

APPEAL from a judgment of the Superior Court for Los Angeles County, Huey Cotton, Judge. Affirmed.

Cox, Castle & Nicholson, Robert Begland and Robert Campbell for Plaintiff and Appellant.

K&L Gates, Hector H. Espinosa, Kevin S. Asfour, Samira F. Torshizi and Timothy L. Pierce for Defendant and Respondent.

Section 7031 of the Business and Professions Code[1] was enacted to deter unlicensed building contractors by (1) preventing them from bringing or maintaining an action to collect compensation for performance of any work for which a license is required (§ 7031, subd. (a)), and (2) allowing any person who utilizes the services of an unlicensed contractor to bring an action for disgorgement of all compensation paid for the performance of any act or contract, regardless whether there was any fault in the contractor's work (§ 7031, subd. (b), hereafter section 7031(b)).  This case presents two issues of first impression related to claims for disgorgement under section 7031(b).  First, what statute of limitation applies to such claims?  And second, when do those claims accrue?

In the present case, plaintiff Eisenberg Village of the Los Angeles Jewish Home for the Aging (Eisenberg) asserted a section 7031(b) claim for disgorgement against Suffolk Construction Company, Inc. (Suffolk) five years after Suffolk completed construction of Eisenberg's 108-unit assisted living facility in Reseda (the Project).  The trial court granted Suffolk's motion for summary adjudication of the claim, finding that Code of Civil Procedure section 340, subdivision (a), the one-year statute of limitation applicable to penalties or forfeitures, applied and that Eisenberg knew or easily could have discovered the facts giving rise to the claim more than one year before it filed its claim.  Eisenberg appeals, contending the trial court erred by applying the one-year

---

[1]     Further undesignated statutory references are to the Business and Professions Code.

statute and by misapplying the discovery rule, and that triable issues of material fact existed regarding whether Eisenberg knew or should have known of the wrongful conduct at issue.

We hold that the one-year statute of limitation applies to claims for disgorgement under section 7031(b). We also hold that the discovery rule does not apply, and that a section 7031(b) claim accrues upon the completion or cessation of the performance of the act or contract at issue. Because Eisenberg failed to bring its section 7031(b) claim within one year after the completion or cessation of Suffolk's performance, we affirm the judgment.

## BACKGROUND

In late 2007, Eisenberg entered into a contract with Suffolk (the Contract) to construct the Project, which had been designed by architectural firm DLR Group (DLR).[2] The first page of the Contract provided Suffolk's California contractor's license number. The Contract included a provision entitled "Contractor's License." In that provision, Suffolk represented and warranted that all contractors and subcontractors performing work on the Project would be validly licensed during the performance of that work. The provision also stated, in all capital letters (and as required by statute), that contractors are required by law to be licensed and are regulated by the Contractors' State License Board, which has jurisdiction to investigate complaints regarding a patent act or omission filed within four years of the alleged

---

[2] DLR is the successor in interest to the original architectural firm.

3

violation, or complaints regarding a latent act or omission as to structural defects filed within 10 years of the alleged violation. Most importantly, the provision stated, again in all capital letters and as required by statute, that any questions regarding a contractor may be referred to the Registrar of the CSLB, and provided the mailing address for doing so.

Suffolk completed construction of the Project in June 2010. Eisenberg paid Suffolk just over $49 million for its work.

After residents had moved into the Project shortly after its completion, problems developed with the hot water supply to the residences. Suffolk worked to remedy the problems. As more residents moved into the Project, the problems returned, and Suffolk continued to try to remedy the problems. In March 2012, Eisenberg received a citation from the California Department of Social Services for supplying hot water to residential units at a temperature above the level allowed by law. Eisenberg contacted DLR and Suffolk to see what could be done to fix the problems with the hot water system. Suffolk agreed to work with Eisenberg to try to fix the problem; DLR did not.

In June 2013, Eisenberg filed a complaint for breach of contract and negligence against DLR, alleging that certain issues Eisenberg experienced at the Project regarding the HVAC system, hot water delivery system, plumbing, and plumbing fixtures were caused by DLR's work. Eisenberg did not name Suffolk in the complaint because Suffolk had agreed to try to fix the hot water issue. Instead, Eisenberg and Suffolk entered into a dispute resolution and tolling agreement in

4

which the parties agreed to try to resolve their disputes in mediation and to toll any applicable statute of limitations while they did so.

The tolling agreement expired in 2014, and in March of that year Eisenberg amended its complaint to add Suffolk as a defendant, alleging breach of contract and negligence claims against it based upon the same issues alleged in the original complaint against only DLR. In January 2015, Eisenberg and Suffolk attempted to resolve the dispute in mediation, but were unsuccessful. According to Eisenberg's Chief Executive Officer and President, it was not until the mediation failed in early 2015 that Eisenberg "began to investigate the merits of its claims against Suffolk . . . [and] discovered for the first time . . . a potential issue with respect to Suffolk's compliance with the California contractor's state license laws." Based upon this investigation, Eisenberg filed a second amended complaint in May 2015 that added a section 7031(b) claim for disgorgement against Suffolk.

Suffolk filed a demurrer to the disgorgement cause of action, asserting several grounds, including that it was barred by the one-year statute of limitation. The trial court overruled the demurrer; as to the statute of limitation, the court found it was not possible to determine at that stage when Eisenberg should have been aware of the facts supporting its claim. Two days after the court ruled, Eisenberg filed a motion for summary adjudication of its disgorgement claim, which the trial court denied.

Four months later, Suffolk brought its own motion for summary adjudication of the disgorgement claim. As we explain in more detail in

5

section A.3.c., *post*, the trial court found that the one-year statute of limitation applicable to claims for penalties or forfeitures applied, and that Eisenberg's claim was time-barred because it knew or easily could have discovered the facts giving rise to the claim more than a year before it filed its claim against Suffolk. The court ultimately entered judgment in favor of Suffolk,[3] from which Eisenberg now appeals.

## DISCUSSION

A.   *Preliminary Matters*

To facilitate our discussion of the parties' contentions on appeal, we begin with a summary of the applicable law, an explanation of Eisenberg's disgorgement claim, and a more detailed discussion of the summary adjudication motion.

1.   *Applicable Law*

Contractors in California are governed by the Contractors' State License Law (the contractors' law). (§ 7000 et seq.) Under that law, all contractors must be licensed by the Contractors' State License Board (the Board or CSLB). If the contractor is an individual, that individual must qualify for a license by passing a written examination to show that he or she has the requisite degree of knowledge and experience in

---

[3]     More than a year and half after the trial court granted Suffolk's motion for summary adjudication, Eisenberg dismissed the other causes of action against Suffolk in accordance with a settlement agreement.

6

the classification applied for[4] and general knowledge of the building, safety, health, and lien laws of the state. (§§ 7065, subd. (a), 7068, subd. (a).) If the contractor is a corporation (such as Suffolk), it must qualify for a license through one person, referred to as a qualifier. (§§ 7068, subd. (b)(3), 7025, subd. (c).) That qualifier must be "a responsible managing officer [RMO] or responsible managing employee [RME] who is qualified for the same license classification as the classification being applied for." (§ 7068, subd. (b)(3).) An RME is "an individual who is a bona fide employee of the applicant and is actively engaged in the classification of work for which that [RME] is the qualifying person on behalf of the applicant." (§ 7068, subd. (c).)

At the time of construction at issue in this appeal, the contractors' law provided that the qualifier "shall be responsible for exercising that direct supervision and control of his or her employer's or principal's construction operations as is necessary to secure full compliance with the provisions of this chapter and the rules and regulations of the board relating to the construction operations." (Former § 7068.1, subd. (a); see Stats. 1991, ch. 145 (Assem. Bill No. 425), § 1.)[5] CSLB regulations

---

[4]     There are three branches of contracting:  (1) general engineering contracting; (2) general building contracting; and (3) specialty contracting. (§ 7055.)  A specialty contractor is a contractor whose principal contracting business involves the use of specialized building trades or crafts.  (§ 7058, subd. (a).)

[5]     The current version of section 7068.1 provides that the qualifier "shall be responsible for exercising that direct supervision and control of his or her employer's or principal's construction operations to secure compliance with this chapter and the rules and regulations of the board."  (§ 7068.1, subd. (a).)

provide that "'direct supervision and control' includes any one or any combination of the following activities: supervising construction, managing construction activities by making technical and administrative decisions, checking jobs for proper workmanship, or direct supervision on construction job sites." (Cal. Code Regs., tit. 16, § 823, subd. (b).)

One of the primary purposes of the contractors' law is to protect the public. (See § 7000.6.) To that end, one of its provisions requires all contractors to include certain language prominently in their contracts informing those with whom they contract that all contractors are required to be licensed, and providing information about how to contact the CSLB to file a complaint or obtain information about the contractor. (§ 7030.) The contractors' law also includes several provisions designed to deter contractors from operating without a valid license: it provides for citations to be issued by the CSLB against unlicensed contractors assessing civil penalties (§ 7028.7); criminal proceedings against unlicensed contractors that could result in jail time, criminal fines, and restitution orders (§ 7028); and a unique provision, section 7031.

Subdivision (a) of section 7031 provides that no person engaged in the business or acting in the capacity of a contractor may bring or maintain any action for the collection of compensation for the performance of any act or contract where a license is required without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract. Subdivision (b)—the provision at issue in this appeal—provides: "Except as provided in

8

subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract." (Subdivision (e) addresses substantial compliance with licensure requirements, and is not at issue here.)

Section 7031(b) does not require the plaintiff seeking disgorgement to have suffered any injury. That is because ""[s]ection 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation [or requiring them to disgorge compensation already paid].""" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 423 (*MW Erectors*), italics omitted; see also *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 518-520.)

### 2. *Eisenberg's Disgorgement Claim*

The facts relevant to Eisenberg's section 7031(b) claim for disgorgement are as follows. Gregory Hescock was Suffolk's RME under Suffolk's license at the time the Contract was signed. At that time, Hescock worked out of Suffolk's Irvine office.[6] In the last half of

---

[6] Suffolk apparently has offices in several places, including outside of California; its official address for its California license is in San Francisco.

2008, Hescock transferred to Suffolk's Boston office and moved to Massachusetts; nevertheless, he remained Suffolk's designated RME on its California license.

Eisenberg alleges in its complaint that it was not aware at any time during the construction of the Project that Hescock was the RME under Suffolk's California license, and that it first discovered a potential issue regarding the status of Suffolk's RME in February 2015. Eisenberg alleges that, after Hescock transferred to Suffolk's Boston office, he did not attend any meetings concerning the Project, did not communicate with any representative of Eisenberg (including the project manager for the Project) or DLR, and did not exercise direct supervision and control over anyone at Suffolk in connection with the Project. As a result, according to Eisenberg, Suffolk did not have a bona fide qualifier as RME, and therefore Suffolk was not duly licensed as a contractor at all times during Suffolk's performance of the Contract. Thus, Eisenberg alleges that under section 7031(b), Suffolk must disgorge all payments Eisenberg made as compensation for Suffolk's work on the Project.

3. *Suffolk's Motion for Summary Adjudication*

a. *Suffolk's Motion*

Suffolk sought summary adjudication of Eisenberg's section 7031(b) claim on four grounds.

First, Suffolk contended the claim was barred by the one-year statute of limitations applicable to actions under a statute for a penalty

or forfeiture (Code Civ. Proc., § 340). It argued that under Eisenberg's theory of the case, the claim accrued in 2008, when Hescock moved to Massachusetts and allegedly failed to fulfill the requirements of an RME, or at the latest in June 2010, when the construction was completed. It asserted that the discovery rule did not apply to claims brought under section 7031(b) because that rule is an equitable rule, and there is no equitable basis for applying it to a section 7031(b) claim, which does not require any injury to the plaintiff. But even if the discovery rule applied, Suffolk argued Eisenberg's claim nevertheless would be time-barred because Eisenberg knew in 2008 that Hescock had moved and no longer was attending meetings regarding the Project, and his status as Suffolk's RME was a matter of public record.[7]

Second, Suffolk argued that Eisenberg's claim failed as a matter of law because section 7068.1 does not provide for automatic—and retroactive—suspension of a contractor's license upon its violation, namely, the RME's failure to "exercis[e] that direct supervision and control of his or her employer's or principal's construction operations as is necessary to secure full compliance with the provisions of this chapter and the rules and regulations of the board relating to the construction operations" (former § 7068.1, subd. (a)). Instead, findings must be made and disciplinary action taken to suspend the contractor's license. And, because section 7031(b) provides for disgorgement only against an

---

[7] We note that a contractor's license is a public record, and that the CSLB offers a free online service that allows any member of the public to check the status of a contractor's license and to obtain information regarding the contractor's qualifying individual.

11

"unlicensed contractor," Suffolk argued Eisenberg's claim necessarily failed.

Suffolk's third and fourth arguments related to whether the evidence was such that Eisenberg would not be able to prove that Hescock fulfilled the requirements of an RME.

b.     *Eisenberg's Opposition*

Eisenberg argued in opposition to Suffolk's motion that its claim was not barred by the statute of limitation, and that there were disputed facts regarding whether Hescock satisfied his duties as Suffolk's RME and whether his conduct would result in automatic suspension of Suffolk's license.  With regard to the statute of limitation, Eisenberg argued that the discovery rule applied to section 7031(b) claims because the rule applies to all invasions of legal rights.  It argued that it did not know (and had no duty to inquire into) the identity of Suffolk's RME until its attorney advised it of the potential claim in 2015.  But Eisenberg argued that, in any event, its claim was timely filed because a section 7031(b) claim is really a claim for rescission, which is subject to a four-year statute of limitation under Code of Civil Procedure section 337, subdivision (c) (or the four-year statute applicable to claims under the unfair competition law (§ 17208)), or it falls under the three-year statute of limitation that governs claims upon a liability created by statute, other than a penalty or forfeiture (Code Civ. Proc., § 338, subd. (a).)

c.    *Trial Court's Ruling*

After requesting, and receiving, supplemental briefing on certain issues, including the applicability of the delayed discovery rule to the statute of limitations, the trial court granted Suffolk's motion on the statute of limitation ground. The court found that the one-year statute governing claims for penalties or forfeitures applied. Although the court declined to decide if the discovery rule applied, it found that even if it did, Eisenberg knew or easily could have discovered the facts making up the claim more than a year before Eisenberg filed its section 7031(b) claim because (1) the Contract provided Suffolk's license number (on the first page); (2) the identity of Suffolk's RME was public information that easily could be accessed; and (3) the undisputed evidence showed that Eisenberg knew that Hescock had moved to Massachusetts in late 2008 and did not participate in meetings regarding the construction or visit the construction site.

B.    *The Parties' Contentions on Appeal*

On appeal, Eisenberg contends the trial court erred in finding the one-year statute of limitation applies, arguing that a four-year or three-year statute should apply because (1) there is no statute specifying the limitation period for disgorgement, so Code of Civil Procedure section 343 applies; (2) a section 7031(b) claim is akin to a restitution claim under the unfair competition law (section 17200 et seq.), which specifies a four-year limitation period; (3) other provisions in the contractors' law specify a four-year or three-year limitation period; and (4) disgorgement

13

is similar to a refund or restitution, to which Code of Civil Procedure section 338, subdivision (a) applies. But even if the one-year statute applies, Eisenberg argues that it did not discover its claim until its lawyer conducted an investigation after receiving discovery in 2014. In essence, Eisenberg argues that, as a lay person, it could not be expected to know the intricacies of the licensing laws, and therefore it had no obligation to conduct an investigation to determine the identity of Suffolk's RME.

As it argued in its summary adjudication motion, Suffolk argues in its respondent's brief that the one-year statute of limitation applies to a section 7031(b) claim, and that Eisenberg's claim accrued in 2008, when Hescock moved to Massachusetts, or no later than June 2010, when construction was completed. It also argues that the discovery rule does not apply because (1) it is an equitable rule; (2) the claim does not involve an "injury"; (3) the facts necessary to establish the elements of the claim were not hidden; and (4) the Legislature did not provide for application of the rule. It also argues that even if the discovery rule applies, the facts giving rise to the claim were known or publicly available in 2008, and Eisenberg's ignorance of the law did not toll the running of the statute of limitation.[8]

---

[8] Alternatively, Suffolk argues that we should affirm on the ground that Eisenberg has no section 7031(b) claim as a matter of law because there is no automatic suspension of a contractor's license for a violation of section 7068.1, and therefore Sullfolk was never unlicensed, or on the ground that Eisenberg failed to raise a triable issue of material fact as to whether Hescock complied with the duties required of an RME. In light of our conclusion that Eisenberg's claim is time-barred, we need not address these arguments.

Suffolk has the better argument.

1.      *Which Statute of Limitation Applies?*

Title 2 of Chapter 2 of the Code of Civil Procedure sets forth statutes of limitation applicable to civil actions.  The first provision of that title states:  "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute."  (Code Civ. Proc., § 312.)  Because section 7031(b) does not prescribe a limitation period, the applicable statute of limitation must be found in this title of the Code of Civil Procedure.[9]

The parties identify three such statutes that might apply:  (1) the three-year statute applicable to "[a]n action upon a liability created by statute, other than a penalty or forfeiture" (Code Civ. Proc., § 338, subd. (a) (hereafter CCP 338(a)); (2) the one-year statute applicable to "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation" (Code Civ. Proc., § 340, subd. (a) (hereafter CCP 340(a)); or (3) the four-year statute that

---

[9]      For this reason, we decline Eisenberg's invitation to apply to section 7031(b) claims the four-year statute of limitation applicable to claims for restitution under California's unfair competition law, which statute is found in the Business and Professions Code, since section 7031(b) is not part of the unfair competition law.

15

applies to "[a]n action for relief not hereinbefore provided for" (Code Civ. Proc., § 343 (the catch-all statute)).

Given that the disgorgement at issue here is a liability created by statute, the applicable limitation statute must be either CCP 338(a) (if the disgorgement is not a penalty or forfeiture) or CCP 340(a) (if it is a penalty or forfeiture). Thus, contrary to Eisenberg's assertion, the catch-all statute does not apply to a section 7031(b) claim. The issue to be resolved, then, is whether section 7031(b) disgorgement is a penalty or forfeiture.

Eisenberg contends that section 7031(b) disgorgement is not a penalty, but rather is restitution. In making this contention, it points to the Supreme Court's definition of restitution in *Clark v. Superior Court* (2010) 50 Cal.4th 605 (*Clark*): "The word 'restitution' means the return of money or other property obtained through an improper means to the person from whom the property was taken. [Citations.] 'The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.' [Citation.]" (*Id.* at p. 614.) The Supreme Court contrasted restitution, which it noted "is not a punitive remedy" (*ibid.*), with a penalty, which it described as "a recovery '"without reference to the actual damage sustained."'" (*Ibid.*)

Eisenberg argues that, since section 7031(b) measures the recovery as "what was taken from the plaintiff," it constitutes restitution rather than a penalty. However, contrary to Eisenberg's characterization, recovery under section 7031(b) is not of something

16

that was "taken"; it is recovery of compensation paid under the terms of a contract. Section 7031 does not invalidate that contract. Rather, it precludes an unlicensed contractor (but not the other party to the contract) from enforcing the contract (§ 7031, subd. (a)), and, *if the other party to the contract brings a timely action*, it requires the unlicensed contractor to return all compensation received from that party, regardless whether that party sustained any actual damage (§ 7031(b)). Moreover, recovery of all compensation paid to the unlicensed contractor does not—and is not intended to—"restore the status quo." (*Clark*, *supra*, 50 Cal.4th at p. 614.) Instead, for reasons of policy (to deter contractors from operating without a valid license), it provides a windfall to the plaintiff, at the expense of the unlicensed contractor, since the plaintiff also retains the work completed by the contractor.

When viewed in this context, it is clear that the disgorgement provided in section 7031(b) is a penalty. It deprives the contractor of any compensation for labor and materials used in the construction while allowing the plaintiff to retain the benefits of that construction. And, because the plaintiff may bring a section 7031(b) disgorgement action regardless of any fault in the construction by the unlicensed contractor, it falls within the Supreme Court's definition of a penalty: "a recovery "'without reference to the actual damage sustained.'""[10]

---

[10] That section 7031 imposes a penalty or forfeiture has been recognized by the Supreme Court, albeit not in the context of determining which statute of limitation applies to claims for disgorgement under section 7031(b). For example, in *MW Erectors, supra,* 36 Cal.4th 412, the Supreme Court examined whether subdivision (a) of section 7310 precludes a contractor who was unlicensed during only a part of the construction from suing to recover

17

(*Clark*, *supra*, 50 Cal.4th at p. 614.)  Accordingly, we hold that CCP 340(a), the one-year statute of limitation, applies to disgorgement claims brought under section 7031(b).

2.	*When Does a Disgorgement Claim Accrue?*

Having determined that the one-year statute of limitation applies, we must determine when a section 7031(b) claim accrues.  (See Code Civ. Proc., § 312 ["Civil actions . . . can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued"].)  "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'"  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).)  The plaintiff's ignorance of the cause of action ordinarily does not delay the running of the statute of limitation.  (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187.)  However, over the years,

---

compensation for work completed while the contractor was licensed.  The court found the language of section 7031 "convey[ed] the Legislature's obvious intent to impose a stiff all-or-nothing penalty for unlicensed work."  (*Id.* at p. 426.)  And in an earlier case, the Supreme Court referred to "'the severity of this sanction and of the forfeitures which [section 7031] necessarily entails'" in upholding the application of the substantial compliance doctrine in construing section 7031.  (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 282.)  (The Legislature subsequently amended the statute to limit the application of the doctrine to a narrow category of cases, making it clear it intended that section 7031 be a severe sanction.  (Stats. 1994, ch. 550 (Sen. Bill No. 1844), § 1).)  Although both of these cases involved subdivision (a) of section 7031, the legislative history of the amendment to added subdivision (b) to the statute shows it was added to ensure that unlicensed contractors "are not able to avoid the full measure of the [contractors' law's] civil penalties."  (*White v. Cridlebaugh, supra,* 178 Cal.App.4th at p. 520.)

courts (and, in some instances, the Legislature) have altered the traditional accrual rule for certain kinds of causes of action by applying the discovery rule.

Under the discovery rule, accrual of a qualifying cause of action is postponed "until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, [the plaintiff] at least suspects, or has reason to suspect, a factual basis for its elements." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 389.) Or, put another way, the statute of limitations does not begin to run until "the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.) "'The policy reason behind the discovery rule is to ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent injury and its cause.'" (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797-798.)

The Supreme Court has explained that "the discovery rule most frequently applies when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1248 (*Shively*); see also *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 831 ["A common thread seems to run through all the types of actions where courts have applied the discovery rule. The injury or the act causing the injury, or both, have been difficult for the

19

plaintiff to detect"].)  It is an equitable rule, intended to avoid unjustly depriving plaintiffs of a remedy for their injuries when they have been diligent in seeking to protect their rights.  (*Shively*, *supra*, 31 Cal.4th at pp. 1249-1250.)

In light of the equitable basis for the discovery rule, it makes little sense to apply the rule to claims for disgorgement under section 7031(b).  A section 7031(b) claim does not require that the plaintiff suffer any injury, or at least an injury in the sense used by the courts to justify an equitable exception to the ordinary rules of accrual.  The fact that a contractor does not have a valid license does not, by itself, cause the plaintiff harm (other than, perhaps, some sort of psychic harm in knowing that he or she hired someone who was not in compliance with the law).[11]  Moreover, the disgorgement mandated by section 7031(b) is not designed to compensate the plaintiff for any harm, but instead is intended to punish the unlicensed contractor.  Thus, holding that the discovery rule does not apply to section 7031(b) claims does not produce a harsh result for plaintiffs.  To the extent a plaintiff *does* suffer an injury caused by an unlicensed contractor that is not easily or immediately discoverable, the discovery rule would continue to apply to other claims seeking recovery for any damages the plaintiff suffered.

---

[11]    We do not discount the fact that an unlicensed contractor may not have the skills necessary to competently perform the job for which he or she was hired, and thus might cause injury to the plaintiff by improperly performing the job.  But such an injury is not an element of a claim for disgorgement under section 7031(b); all that is required is that the contractor performed an act or contract and did not possess a valid license some time during that performance.

In contrast, if we were to hold that the discovery rule applied, it would be nearly impossible to formulate rules for its application that could be consistently applied while staying true to the policies underlying statutes of limitation, i.e., "protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps' . . . [and] stimulat[ing] plaintiffs to pursue their claims diligently." (*Fox, supra*, 35 Cal.4th at p. 806.) Since section 7031(b) does not require any injury to the plaintiff, what kinds of facts would give rise to a reason to suspect a factual basis for the claim? If the plaintiff has no duty to investigate whether the contractor was properly licensed absent some sort of facts that would put him or her on notice, there would be, in effect, no time limitation at all in most cases.

For example, say a plaintiff contracts with a contractor to construct a building for several million dollars. Unbeknownst to the plaintiff, the contractor either did not have a valid license, or its license was suspended during part of the construction. The building is built, and there are no problems with the construction or the building. Ten years later, the plaintiff's business is failing and he or she is looking for a source of funds. He or she happens to come across an article about a section 7031(b) case, or speaks to an attorney who happens to have knowledge of section 7031(b), so the plaintiff decides to check the contractor's license records and discovers that the license had lapsed or been suspended during the construction, i.e., the plaintiff "discovers" the "wrongdoing." If the discovery rule applied, the plaintiff could file a

21

section 7031(b) claim and get back all the compensation paid for construction of a building that the plaintiff has used (and presumably will continue to use) without any problems for 10 years. An absurd result, to be sure, but there would be no principled way to avoid it under the discovery rule, because there was no reason for the plaintiff to suspect that the contractor's license had lapsed or been suspended during the construction.

To avoid such absurd results, and because there is no reason in equity to apply it, we hold that the discovery rule does not apply to section 7031(b) claims. Thus, the ordinary rule of accrual applies, i.e., the claim accrues "'when the cause of action is complete with all of its elements.'" (*Fox, supra*, 35 Cal.4th at p. 806.) In the case of a section 7031(b) claim, the cause of action is complete when an unlicensed contractor completes or ceases performance of the act or contract at issue.[12]

3.     *Application to This Case*

In the present case, Suffolk completed its construction of the Project in June 2010. Thus, Eisenberg's section 7031(b) claim ordinarily would be time-barred after June 2011. In this case, however,

---

[12]     At oral argument, Suffolk's counsel argued we should hold that a section 7031(b) claim accrues at the time each payment is made under the construction contract. Such a holding would be inconsistent with the statute, however, since a plaintiff is entitled to recover all compensation paid to a contractor under a contract if that contractor was unlicensed at any time during the performance of the contract (except when subdivision (e) of section 7031 applies).

Suffolk apparently did some additional work to remedy the hot water problem Eisenberg was experiencing immediately after completion of construction and in 2012, although it is unclear from the record whether such work would be considered to be work under the original Contract or under a new agreement.  In any event, however, it is clear that by the time Eisenberg amended its complaint to allege claims against Suffolk for breach of contract and negligence, Suffolk had ceased all performance under any agreement with Eisenberg.  That amended complaint was filed on March 25, 2014.  Eisenberg did not allege its section 7031(b) claim until it filed its second amended complaint on May 18, 2015, more than a year later.  Thus, the trial court correctly found that Eisenberg's section 7031(b) claim is barred by the one-year statute of limitation set forth in CCP 340(a).

## DISPOSITION

The judgment is affirmed.  Suffolk shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                              WILLHITE, Acting P. J.

We concur:


COLLINS, J.                             CURREY, J.